# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**RICK A. HOLTZ,**

    **Petitioner,**

  **v.**           **Case No. 06-C-965**

**MICHAEL THURMER,**

    **Respondent.**

---

## <u>DECISION AND ORDER</u>

Pro se petitioner Rick A. Holtz, a Wisconsin state prisoner, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his conviction of second-degree sexual assault of a child on the ground that his trial counsel was ineffective.

.        **I. BACKGROUND**

Petitioner challenged his counsel's effectiveness in a post-conviction hearing. The state court of appeals affirmed his conviction and the denial of post-conviction relief, and the state supreme court denied review. The state court of appeals summarized the facts of the case as follows:

> On October 6, 2001, Holtz, then age twenty-seven, allowed a group of seven teenagers to party in his apartment. Upon their request, Holtz provided the group with alcohol. The group imbibed to the point where some teens passed out or vomited. The next day Amanda H., age thirteen, reported that Holtz had sexual intercourse with her.

> At trial, Amanda testified that she first met Holtz when she and her friends went to his apartment. By 9:30 or 10:00 p.m. she was "pretty drunk." She was lying on the bathroom floor when Holtz picked her up and took her to his bedroom. It was about 12:30 or 1:00 a.m. Holtz laid her on his bed. She described herself as "halfway passed out by then." Holtz removed her pants and underwear and had sexual intercourse with her. She believed he used a condom. On cross-examination she explained that she figured Holtz used a condom because her test results from the rape examination did not indicate the presence of semen.

Three other teens testified that at some point Amanda was in Holtz's bedroom. One girl indicated that when she saw Amanda at about 8:30 the next morning, Amanda was upset and reported that Holtz had had sex with her. The crime lab report was admitted into evidence upon stipulation.

State v. Holtz, Appeal Nos. 2003AP1309-CR, 2004AP603-CR, 2005 Wisc. App. LEXIS 373, at *2 (Wis. Ct. App. April 27, 2005).

## II. STANDARD OF REVIEW

I may grant habeas relief only if the state court decision under review was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); involved an "unreasonable application" of such clearly established law, id.; or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). An unreasonable application is one in which "the state court identifies the correct governing legal principle from Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. 362, 413 (2000). Under the unreasonable application prong, "substantial deference is due state court determinations." Searcy v. Jaimet, 332 F.3d 1081, 1089 (7th Cir. 2003). "An unreasonable application of federal law is different from an incorrect application of federal law." Williams, 529 U.S. at 410.

## III. DISCUSSION

Petitioner raises several ineffective assistance claims, relating to his counsel's failure to effectively impeach Amanda, his handling of the crime lab reports and his preparation of defense witnesses. Petitioner argues that the state court of appeals unreasonably applied Strickland v. Washington, 466 U.S. 668, 687-88 (1984), which governs ineffective assistance claims. Under Strickland, a defendant must show that his counsel performed deficiently and that the deficient performance resulted in his being

prejudiced.  I assess counsel's performance under a reasonableness standard and presume that it fell within the wide range of reasonable professional assistance.  Id. at 688-89.  Informed strategic decisions by a lawyer are virtually unchallengeable.  Id. at 690-91.  In order to establish prejudice, petitioner must show that but for counsel's deficient performance, it is reasonably probable that the outcome of the case would have been different.  Id. at 694.

## A.    Cross-Examination of Amanda

Petitioner argues that his counsel should have impeached Amanda with a statement she made to the police, a statement she made about a condom, and information about her relationship with another teenager.

As to the police statement, when Amanda initially reported the rape, she stated that she had blacked out and could not remember anything.  Her mother was present when she made this statement.  Subsequently, Amanda provided a detailed description of the rape.  Her mother was not present when she made the second statement.  Petitioner argues that counsel should have called the police officer or Amanda's mother to testify about Amanda's first statement.  However, the state court of appeals reasonably found that counsel's decision not to call the officer or Amanda's mother to impeach her did not constitute deficient performance because it was a reasonable strategic decision based on counsel's view that the costs would outweigh the benefits.  Both the officer and Amanda's mother could have provided testimony damaging to petitioner.

As to the statement about a condom, Amanda initially stated that she did not know whether petitioner wore a condom but testified at trial that she thought he did and that she saw a condom.  On cross-examination, counsel elicited from Amanda that the actual reason that she thought petitioner wore a condom was that the results of lab tests did not

disclose the presence of semen.  The state court of appeals reasonably found that counsel's cross-examination was effective – it established that Amanda was tailoring her testimony to fit the evidence.  Petitioner argues that his counsel also could have impeached Amanda's condom testimony by calling a police officer to testify that no condom was ever discovered at the scene.  However, the court of appeals reasonably concluded that counsel's decision not to call the officer was a strategic one that it would not second guess.

Finally, petitioner argues that his counsel should have impeached Amanda by inquiring about the possibility that she had sex with another teenager, Dan.  At the trial, Amanda testified that at the party she spent time alone with Dan.  At trial, Dan testified that he did not have sex with Amanda.  At petitioner's post-conviction hearing, petitioner's trial counsel testified as follows:

> Well, what I was trying to show strategically in this case was that there was a group of teenager kids, and they were drunk, and they're all telling different stories about what took place that evening.  And that Amanda had said some things that were really basically impossible, and that the only reason this claim was in front of the jury was we couldn't prove it didn't happen.  I tried to show that, but I couldn't get too precise about exactly what everyone said, because a precise picture of what people were saying was a strong prosecution case, so I had to be more general than that . . .
>
> I didn't get a real precise picture of just exactly what the apartment looked like, and who said what, and exactly what time who drank what liquor, because if we got very precise, it would be apparent that no matter whose story you believed, the defendant was in his bedroom with a 14-year-old girl for some hours with the door locked, and she came out and said she'd been raped.  I didn't want that precise story to be clear . . .
>
> I took the approach that Amanda was drunk and we didn't know what she was talking about and was talking nonsense.  And that the other kids didn't know what happened because they were drunk and they were all telling different stories, and they did tell a lot of significantly different stories at the trial.  And I didn't think that it would be helpful to accuse some unknown person of having sex with this child.  I don't see how that would help my

client . . . from being convicted. It wouldn't really matter if she had sex with somebody else.  What matters is if she had sex with the defendant.

(Dec. 12, 2003 Mot. Hr'g Tr. at 94-95, 109-10.)

Counsel's strategic determination that petitioner would benefit if the testimony was kept at a high level of generality and a precise timeline of the events of the evening was avoided was a reasonable one.  I have no basis for second-guessing it.

**B.    Counsel's Handling of Lab Test Results**

Petitioner complains of several problems with his counsel's handling of crime lab test results.  First, the lab test found in Amanda's pubic hair a hair that did not come from petitioner, and petitioner contends that his counsel should have used this to establish that Amanda had sex with a third party.   Respondent argues that petitioner procedurally defaulted this argument.  However, petitioner appears to have raised the claim in the state courts.   Nevertheless, the argument fails.   I have already determined that counsel's strategic decision not to pursue a defense involving Amanda's having had sex with a third party was reasonable.   To pursue such a defense would have required counsel to establish a precise timeline of events that would have highlighted testimony that petitioner and Amanda were in petitioner's bedroom for several hours with the door locked.  Making a lot out of the pubic hair would have required counsel to pursue this line of defense, and as indicated, counsel's decision not to do so was reasonable.

Second, petitioner argues that his counsel was ineffective for not conveying to the jury that the test results were negative for semen.  The state court of appeals determined that petitioner's counsel was not ineffective in this respect.  This determination was not an unreasonable application of Strickland.   Counsel entered into a stipulation with the prosecutor that stated that the lab results neither confirmed nor negated sexual contact

between petitioner and Amanda. This is so because the stipulation conveyed the information that the results of the test were negative for semen. In addition, the lab report itself, which clearly stated that no semen was found, was provided to the jury. Further, Amanda acknowledged on cross-examination that the tests were negative for semen.

In addition, petitioner asserts that his counsel should have called the lab test analyst as a witness. However, counsel did not call the analyst because he believed that doing so would enable the prosecutor to rehash the state's case on cross-examination and to elicit testimony that the absence of semen did not mean that the victim was not sexually assaulted. In declining to second guess this strategic decision, the court of appeals did not unreasonably apply Strickland.

Finally, petitioner argues that his trial counsel was ineffective for failing to include in the stipulation the date of Amanda's examination or to question Amanda about it.[1] This claim is confusing because petitioner's trial counsel did include the exam date in the stipulation. The relevant facts are as follows: Amanda was examined about twenty-two hours after the assault. The stipulation that petitioner's counsel entered into with the prosecutor included the exam date. However, when the judge summarized the test results for the jury, he did not include this information in his summary, and the judge sent the lab report, but not the stipulation, to the jury. The lab report does not contain the exam date, but it does contain the report date of October 18, 2001, eleven or twelve days after the assault. While deliberating, the jury sent out a note asking when Amanda was examined and the judge responded that this information had not been introduced in evidence. It

_____

[1]The state court of appeals held that petitioner waived this claim and that the claim failed on the merits. In the present proceeding, respondent has not argued that petitioner defaulted this claim and thus has waived the right to do so. Further, I may reach the merits of the claim because the state court of appeals did so.

appears that during the post-conviction and appellate proceedings in state court, neither petitioner's counsel nor the State's counsel were aware that the stipulation included the date that Amanda was examined.

Petitioner alleges that his trial counsel performed deficiently for failing to include the date of the exam in the stipulation or to elicit this information from Amanda. However, petitioner's trial counsel did include this information in the stipulation and therefore he had no reason to ask Amanda about it. Petitioner did not argue in state court and does not now argue that his trial counsel was ineffective for failing to object to the judge's summary of the lab report or to the judge's failure to send the stipulation to the jury in response to its question. Thus, I cannot address such a question.

## C. Presentation of Defense Witness

Petitioner argues that his counsel was ineffective for relying on his investigator's interviews with three teenagers rather than interviewing them himself. Counsel called the teenagers as witnesses after they told his investigator that Amanda had a poor reputation for truthfulness. Counsel called them in an effort to damage Amanda's credibility. The state court of appeals concluded that petitioner was not prejudiced by his counsel's failure to personally interview these witnesses. The court summarized the witnesses' testimony as follows:

> Each of the witnesses indicated that Amanda was known to be untruthful, with only one hedging his response that she was untruthful only when really drunk. Despite some damaging aspects of the defense witnesses' testimony, much of it was effective. Two of the witnesses testified that earlier in the evening Amanda made a false report that Holtz had taken off his clothes and was going to try to rape her. One witness indicated that when Amanda told the others that Holtz had sex with her, some believed her and others did not. The desired point was made.

Holtz, 2005 Wisc. App. LEXIS 373, at *14. There is nothing in the record which would enable me to conclude that in reaching this conclusion the state court of appeals unreasonably applied Strickland.

**Therefore,**

**IT IS ORDERED** that Rick A. Holtz's petition for a writ of habeas corpus is **DENIED**.

Dated at Milwaukee, Wisconsin, this 12 day of July, 2007.


/s_____
LYNN ADELMAN
District Judge